UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In Re:<br><br>MELISSA B. SARNER,<br><br>Debtor. | Case No. 10-17487-JNF<br><br>Chapter 13 |
|---|---|

## MOTION OF CREDITOR DEAN CO-OPERATIVE BANK FOR
## RELIEF FROM AUTOMATIC STAY
### (Emergency Determination Requested)

Now comes Dean Co-operative Bank (the "Bank"), a secured creditor and holder of a first mortgage on the real property of Melissa B. Sarner (the "Debtor") located at 625 Old Farm Road, Franklin, Massachusetts (the "Property"), and hereby moves for relief from the automatic stay (which it has twice been granted as to the Property). Nonetheless, the Bank seeks such relief pursuant to 11 U.S.C. §§ 362 (d)(1) and (d)(2) insofar as cause exists, the Debtor does not have equity in the property, and such property is not necessary to an effective rehabilitation/reorganization. In connection with the relief requested herein, the Bank also requests that this Court waive the 14-day stay imposed pursuant to Fed. R. Bankr. P. 4001(a)(3).[1]

In further support of this Motion, the Bank states as follows:

### BACKGROUND

A.  **Loan Arrangement Among the Debtor, Lawrence, and the Bank**

1.  On or about July 17, 2003, the Debtor and her husband, Lawrence Sarner ("Lawrence") executed and delivered a certain Note made payable to the Bank in the original

---

[1] The Bank files the Motion in abundance of caution as it does not believe that the automatic stay is applicable or will be "confirmed" pursuant to the Debtor's Motion to Confirm the Automatic Stay. An objection to the Debtor's Motion is filed concurrently herewith.

9. On June 5, 2008, the Court, on motion of the Trustee, ordered the Lawrence I Case dismissed for Lawrence's failure to make plan payments.

### C. The Debtor's First Bankruptcy

10. After the dismissal of the Lawrence I Case, Middlesex again scheduled a foreclosure sale to be conducted on August 13, 2008.

11. On the eve of the second scheduled foreclosure sale of Middlesex on August 10, 2008, the Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code. The Debtor's case was designated as No. 08-16008 (the "Melissa I Case").

12. On November 21, 2008, Middlesex filed a Motion for Relief from Stay. The Motion was allowed on January 8, 2009.

13. On or about March 6, 2009, the Bank was informed that Middlesex had cancelled its foreclosure sale that was scheduled for March 25, 2009 after coming to an arrangement with the Debtor.

14. On March 18, 2009, the Bank filed a Motion for Relief from Stay to foreclose on the Mortgage and to sell the Property.

15. On April 23, 2009, the Court allowed the Bank's Motion for Relief from Stay. However, the Court's order was not effective until October 1, 2009 and if the Debtor cured her post-petition arrearage by that date, then the order would be vacated.

16. On September 29, 2009, the Chapter 13 Trustee filed a Motion to Dismiss the Melissa I Case based upon the Debtor's failure to make plan payments.

17. On October 5, 2009, the Bank filed an Affidavit of Notice of Non-Cure stating that the Debtor did not cure her pre-petition arrearage by October 1, 2009. In fact, during that six

3

month period, the Debtor made only two payments to the Bank and became further in arrears (a single payment was also received from the Trustee as part of the Debtor's Plan payments).

18. On October 23, 2009, the Bank sent a Notice of Intention to Foreclose to the Debtor and Lawrence. The Bank's foreclosure sale was scheduled for November 24, 2009. As set forth below, the Bank was unable to conduct the foreclosure sale as scheduled due to Lawrence's second bankruptcy filing.

19. On November 18, 2009, the Debtor filed a motion to convert the Melissa I Case to a Chapter 7 Case.

20. On or about December 28, 2009, the Chapter 7 trustee found that the Debtor did not have any assets that could be distributed to her creditors.

21. On or about March 5, 2010, the Debtor received a discharge in the Melissa I Case.

22. On or about March 11, 2010, the Melissa I Case was closed.

**D.    Lawrence's Second Bankruptcy**

23. On November 24, 2009, Lawrence filed a voluntary petition under Chapter 13 of the Bankruptcy Code in order to prevent the Bank's foreclosure sale. The case was designated as No. 09-21351 (the "Lawrence II Case").

24. On or about February 18, 2010, the Bank filed a Motion for Relief from Stay to foreclose on the Mortgage and to sell the Property.

25. On or about March 11, 2010, the Court granted the Bank's motion for relief pursuant to 11 U.S.C. §§ 362(d)(1), (d)(2), and (d)(4).

26. On or about May 1, 2010, Lawrence filed a motion to reconsider the order granting stay relief. The Court denied the motion to reconsider on May 19, 2010. Lawrence has

4

appealed the denial of the motion for reconsideration, but *did not* appeal the granting of stay relief to the Bank.

27. The Bank subsequently scheduled a foreclosure sale for August 11, 2010.

E.   **The Debtor's Second Bankruptcy**

28. On or about July 11, 2010 (the "Petition Date"), the Debtor commenced the present action by filing a voluntary petition under Chapter 13 of the United States Bankruptcy Code in yet another, admitted attempt to prevent the Bank's foreclosure sale. The case was designated as No. 10-17487.

29. The Debtor has not yet filed a Chapter 13 Plan and any Chapter 13 Plan would not be confirmable based on her husband's pending Chapter 13 Plan which includes the Debtor's and the husband's income as necessary to fund her husband's plan.

30. The total amount secured by the Mortgage as of the Petition Date is $431,354.56. the total amount secured by the Mortgage as of the date of the filing of this Motion is approximately $447,704.74.

31. The amount of each monthly payment of principal and interest due the Bank is $2,168.96. As of date of filing, and the date of the anticipated hearing on this Motion, one (1) post-petition payment was due. [2]

32. The total amount of post-petition payments owed to the Bank is $2,168.96.

33. The total amount of pre-petition arrearage is $431,354.56. This amount consists of $391,923.95 of principal and interest, $2,017.17 in late fees, $924.00 of forced insurance, $825.00 in appraisal fees and $35,664.44 in legal fees and expenses.

---

[2] The loan of course has long been in default and the debt accelerated. The foregoing is not intended to concede that only a monthly mortgage payment is due and payable.

5

## Encumbrances on the Property

34. There are the following encumbrances affecting the property as of the Petition Date:

| Creditor | Type of Lien | Amount Secured[3] |
|---|---|---|
| Town of Franklin | Real Estate and Municipal Taxes | $17,554.25[4] |
| Dean Cooperative Bank | First Mortgage | $431,354.56 |
| Middlesex Savings Bank | Second Mortgage | $35,333.82 |
| Household Finance Corporation II | Third Mortgage | $47,978.28 |
| Bonadent, Inc. | Attachment | $33,000.00 |
| TBF Financial LLC | Execution | $18,452.87 |
| Alpha Dental Center | Fourth Mortgage | $112,000.00 |
| Internal Revenue Service | Tax Lien | $59,004.48 |
| Massachusetts Department of Revenue | Tax Lien | $11,796.41 |
| **TOTAL:** | | **$766,474.67** |

35. As of the Petition Date, upon information and belief, the Property was encumbered by real estate and municipal tax liens in the amount of $17,554.25.

36. According to an appraisal prepared by John G. Turinese for the Bank dated December 7, 2009, the Property has a fair market value $487,000.00. See **Exhibit B**.

37. Using a discount factor of 10-15%, the Property has an anticipated liquidation value of $414,000.00-$439,000.00.

---

[3] Unless otherwise noted, all figures are based on filings in the Melissa I Case.

[4] Based on a payoff letter from the Town of Franklin.

6

38. The Bank is the original holder of the Note and the Mortgage.

39. There is no other collateral securing the Debtor's obligations to the Bank.

40. On August 16, 2005, the Debtor filed a Declaration of Homestead regarding the Property.

## BASIS FOR RELIEF

### A. Cause Exists Under 11 U.S.C. § 362(d)(1) Because the Bank's Claim is Not Adequately Protected and the Bank has Already Received Stay Relief to Foreclose on the Mortgage

41. Cause exists because the Debtor, and her husband, are serial filers who have abused and continue to abuse the bankruptcy system, which is intended to provide relief for honest debtors. The facts summarized above clearly show a combination of a total inability to perform within the Chapter 13 format combined with a willful and deliberate timing of filings, and the use of separate rather than joint cases by a husband and wife to stave off foreclosures and game the system.

42. Cause exists because between the Debtor and Lawrence the bankruptcy court has already entered <u>four</u> orders providing stay relief as to the Property, two for Middlesex, the second mortgagee, and two for the Bank, the first mortgagee. This is, accordingly, the *third* time, at considerable expense, that the Bank has had to come to this court for stay relief, and incredibly in the face of one such order, described below, actually being pending in the Lawrence II Case!

43. The last of the stay relief orders, the one granted in favor of the Bank in the Lawrence II Case is under section 362(d)(4) of the Code, which reflects a finding by Judge Hillman that the filing of the petition is "part of a scheme to delay, hinder, and defraud creditors."

7

44. The Debtor boldly admits, in what can only be viewed as in furtherance of the same scheme, that the filing was, to no one's surprise, "to avoid foreclosure." See Motion for Order Confirming Automatic Stay, at para. 5 (Doc. No. 20). This filing can only be viewed, not as an attempt to reorganize, but as part of a continuing attempt to avoid the impact of prior orders of the bankruptcy court.

45. Cause also exists for granting stay relief because the Debtor has failed to make the post-petition payment due to the Bank on August 1, 2010. Further, the Debtor has failed to pay past due real estate and other municipal taxes which exceed $17,000 as of the Petition Date and continue to accrue interest to the detriment of the Bank's secured claim. Failure to make post-petition payments and to pay real estate and other municipal taxes that have priority over the Bank's secured claim is clear failure to provide adequate protection.

**B.     The Bank in Entitled to Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(2) Because the Debtor Does Not Have Any Equity in the Property, and the Property is Not Necessary for a Successful Reorganization**

46. A secured creditor is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2) when the debtor has no equity in the property in question and such property is not necessary for an effective reorganization. See Vale Mills Corp. v. Gellert (In re Gellert), 55 B.R. 970, 973 (Bankr. D.N.H. 1985) (holding that 11 U.S.C. § 362(d)(2)(B) applies in Chapter 13 proceedings). It is the moving party's burden to establish the lack of equity. 11 U.S.C. § 362(g)(1). However, it is the debtor's burden to establish not only that the property is necessary for an effective reorganization, but that such plan has a reasonable likelihood of confirmation within a reasonable time. Gellert, 55 B.R at 973 (granting relief from automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (2) where Chapter 13 debtor failed to show that plan could be confirmed in reasonable time).

47. The Bank has met its burden because it is undisputed that the Debtor does not have any equity in the Property. In fact, the Debtor admitted under the penalty of perjury in the Melissa I Case that she has no equity in the Property. See Debtor's Schedule A in the Melissa I Case, Doc. 21. The Bank's appraisal also indicates that the Property has a fair market value of $487,000, significantly less than the over $700,000 of liens encumbering the Property as of the Petition Date. See Ex. B. Further, on December 28, 2009, the Chapter 7 trustee in the Melissa I Case found that the Debtor's estate did not have any assets due to the encumbrances on the Property. See Docket for Melissa I Case, attached hereto as **Exhibit "C"**.

48. The Bank submits that the Property is not necessary for an effective reorganization as an effective reorganization does not equate to allowing the Debtor to maintain property that she cannot afford. As evidenced by the Debtor's multiple bankruptcy filings, the Debtor does not have the ability to make the payments necessary to maintain ownership of the Property, and clearly can receive no benefit in that direction from her husband, who likewise is a serial filer with no prospects for success..

49. Accordingly, the Court should grant the Bank relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2).

50. The Bank further requests that the Court waive the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) as the Bank's foreclosure sale is presently scheduled for August 11, 2010 – within the 14-day period.

51. Pursuant to MLBR 13-16-1(b), the Bank did not confer with counsel for the Debtor because the Bank is seeking an emergency determination of this Motion. Further, based on the *Motion of Debtor for Order Confirming Automatic Stay* filed by the Debtor, the Bank submits that this Motion will be contested.

52. The Motion for Relief – Real Estate Worksheet required pursuant to MLBR 13-16-1(d).

WHEREFORE, the Bank requests that this Court enter an order:

A. Granting the Bank relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2) to permit the Bank to conduct a public auction foreclosure sale of the Property and to exercise all of the Bank's other rights under the Mortgage and other applicable law;

B. Waiving the 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3) to permit the Bank to conduct the foreclosure sale as scheduled on August 11, 2010; and

C. Granting such other relief as is just and necessary.

                              DEAN CO-OPERATIVE BANK

                              By its Attorneys,
                              RIEMER & BRAUNSTEIN LLP

Dated: August 6, 2010

                              */s/ Alexander Rheaume*
                              Guy B. Moss
                              BBO #357960
                              Alexander G. Rheaume
                              BBO #667419
                              Riemer & Braunstein LLP
                              Three Center Plaza
                              Boston, Massachusetts 02108
                              (617) 523-9000

1238265.2